[Cite as *State v. Haddox*, 2016-Ohio-3368.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No. E-15-017

        Appellee                          Trial Court No. 2011-CR-309

v.

Gregory R. Haddox                       **DECISION AND JUDGMENT**

        Appellant                         Decided:  June 10, 2016

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, Mary Ann
Barylski, Chief Assistant Prosecuting Attorney, and Pamela A.
Gross, Assistant Prosecuting Attorney, for appellee.

Emil G. Gravelle III, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Gregory Haddox, appeals the January 8, 2015 judgment of the Erie County Court of Common Pleas which, following appellant's admission to a community control violation sentenced him to a total of 58 months of imprisonment.  For the reasons that follow we reverse, in part, and remand for resentencing.

{¶ 2} On September 9, 2011, a 23-count indictment was filed against appellant charging him with the predicate offense of engaging in a pattern of corrupt activities. Specifically, appellant was indicted on 15 counts of forgery, all either fourth or fifth-degree felonies. Appellant was also indicted for grand theft, theft of elderly persons, possession of criminal tools, theft, and passing bad checks. The charges stemmed from appellant's subcontractor relationship with Yoder's Home Improvement. On multiple occasions, from August 2010 through July 2011, appellant, in his salesperson role to secure roofing jobs, forged checks from multiple roofing customers and took the funds for his personal use. Appellant fraudulently signed the checks with his employer's name, endorsed them with rubber stamps he had made, and deposited them in his personal account.

{¶ 3} On May 18, 2012, appellant entered guilty pleas to a total of 11 counts. Specifically, seven counts of forgery, one count of grand theft, one count of theft of elderly persons (aggregated with four individuals), one count of possession of criminal tools, and one count of theft. Appellant agreed to pay just over $100,000 in restitution with the majority of the funds going to Yoder's Home Improvement and small sums to the Sandusky Register and Bennett Novelties.

{¶ 4} The sentencing hearing was held on September 20, 2012, and appellant was sentenced to five years of community control, was ordered to pay $102,285.35 in restitution, was ordered to have no contact with the victims, and was ordered to pay the

2.

costs of the proceedings. Appellant was informed at the hearing that if he violated the terms of his community control, a 58-month sentence would be imposed.

{¶ 5} The October 1, 2012 sentencing judgment entry listed, by name, the 13 customers that appellant stole from including business owner, Mel Yoder. On October 12, 2012, a nunc pro tunc judgment entry was entered to correct a typographical error.

{¶ 6} At a hearing held on January 23, 2015, appellant was found to have violated his community control and it was terminated. The sentencing judgment entry, journalized on January 28, 2015, ordered that appellant's 11-month sentences for Counts 2, 6, 14, 19, 20, and 23, run concurrent and that his 17-month sentences for Counts 4, 8, 10, 12, and 17 run concurrent with each other. The court then ordered that the concurrent sentences be served consecutive to each other for a total of 28 months. Finally, the court ordered the 28-month sentence be served consecutively to the 30-month sentence in Count 18 for 58 months of imprisonment. This appeal followed.

{¶ 7} Appellant now sets forth six assignments of error for our review:

1. The trial court committed plain error when it failed to aggregate offenses pursuant to R.C. 2913.61(C).

2. The trial court committed plain error by failing to merge allied offenses of similar import pursuant to R.C. 2941.25.

3.

3. The trial court erred when it failed to reduce Mr. Haddox's penalties and punishments pursuant to changes made by the enactment of H.B. 86.

4. The acts and omissions of trial counsel deprived appellant of his right to effective assistance of counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and Section 16 of the Ohio Constitution.

5. The trial court erred in sentencing Mr. Haddox to serve consecutive sentences in violation of R.C. 2929.14(C)(4).

6. The trial court erred when it failed to provide Mr. Haddox with the proper notification pursuant to R.C. 2947.23(A).

{¶ 8} In appellant's first assignment of error, he contends that the court committed plain error in failing to aggregate the grand theft and theft of elderly persons offenses and all of the forgery offenses. We initially note that because appellant did not raise the aggregate offense issue in the lower court, our review is limited to plain error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim.R. 52(B). To prevail under a plain error analysis, an appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

4.

**{¶ 9}** R.C. 2913.61(C) provides, in relevant part:

(1) When a series of offenses under section 2913.02 of the Revised Code, or a series of violations of, attempts to commit a violation of, conspiracies to violate, or complicity in violations of division (A)(1) of section 1716.14, section 2913.02, 2913.03, or 2913.04, division (B)(1) or (2) of section 2913.21, or section 2913.31 or 2913.43 of the Revised Code involving a victim who is an elderly person or disabled adult, is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses shall be tried as a single offense. * * *. The value of the property or services involved in the series of offenses for the purpose of determining the value as required by division (A) of this section is the aggregate value of all property and services involved in all offenses in the series.

(2) If an offender commits a series of offenses under section 2913.02 of the Revised Code that involves a common course of conduct to defraud multiple victims, all of the offenses may be tried as a single offense. If an offender is being tried for the commission of a series of violations of, attempts to commit a violation of, conspiracies to violate, or complicity in violations of division (A)(1) of section 1716.14, section 2913.02, 2913.03, or 2913.04, division (B)(1) or (2) of section 2913.21, or section 2913.31 or 2913.43 of the Revised Code, whether committed against one victim or

more than one victim, involving a victim who is an elderly person or disabled adult, pursuant to a scheme or course of conduct, all of those offenses may be tried as a single offense. * * *. If the offenses are tried as a single offense, the value of the property or services involved for the purpose of determining the value as required by division (A) of this section is the aggregate value of all property and services involved in all of the offenses in the course of conduct.

{¶ 10} Appellant contends that under R.C. 2913.61(C)(1), the grand theft and theft of an elderly person counts should have been aggregated into a single offense because there was only one victim, Yoder's Home Improvement. Based on this reasoning, appellant further argues that all 15 forgery offenses, because they were committed in the same employment, were required to be aggregated. Conversely, the state contends that R.C. 2913.61(C)(2), rather than (C)(1) applies because there were multiple victims and, thus, aggregation of the counts was permissive.

{¶ 11} In support of his argument, appellant relies on a case where the defendant defrauded a single individual, her grandfather, and the court determined that R.C. 2913.61(C)(1), requiring aggregation, applied. *State v. Gibson*, 2d Dist. Champaign No. 2013-CA-11, 2014-Ohio-136. Similarly, in *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.), the defendant, employed as a payroll administrator, issued herself additional payroll checks. The court concluded that because there was only one victim, the employer, the theft counts were required to be aggregated.

6.

*Id.* at ¶ 14-15. More aligned with the present facts, in *State v. Crish*, 3d Dist. Allen No. 1-08-13, 2008-Ohio-5196, the defendant, an agent for a title company, used customer funds directed to go to mortgage payoffs for her personal use. The loss was borne by the company. The court concluded that the theft offenses against "various investors" (as described in the indictment) were committed against one victim and that the offenses were required to be aggregated. *Id.* at ¶ 32.

{¶ 12} Distinguishable from the above cases but related to the present facts, in *State v. Rodriguez*, 8th Dist. Cuyahoga No. 89198, 2007-Ohio-6835, the defendant used a forged social security card to obtain 17 motor vehicle titles. The court concluded that each offense was committed when appellant made the application for a title. *Id.* at ¶ 25.

{¶ 13} Looking at *Crish* and *Rodriguez*, we note that unlike *Crish*, appellant had face-to-face dealings with Yoder customers, individually named in the indictment, who appellant forged signatures on each of their personal checks. Further, appellant's 2012 sentence specifically prohibited contact with each of the named individuals. Thus, similar to *Rodriquez*, each act of theft was committed when appellant deceived the individual customer, forged the check and deposited it into his account.

{¶ 14} Accordingly, because we conclude that there were multiple victims, aggregation of the offenses was not mandatory. Appellant's first assignment of error is not well-taken.

{¶ 15} In appellant's second assignment of error he argues that the trial court erred by failing to merge allied offenses of similar import at sentencing. As with the aggregate

7.

offenses argument, appellant failed to raise the issue in the trial court.  The failure to raise

the allied offenses issue waives all but plain error on appeal.  *State v. Rogers*, 143 Ohio

St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

{¶ 16} The allied offense statute, R.C. 2941.25, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 17} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the

Supreme Court of Ohio clarified how courts are to determine whether offenses are allied.

The court noted that the allied-offenses analysis is dependent upon the facts of a case

because R.C. 2941.25 focuses on the defendant's conduct.  *Id.* at ¶ 26.  However, conduct

is but one factor to consider when determining whether offenses are allied.  *Id.* at ¶ 21.

The court stated:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must

8.

ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered. Id. at ¶ 31.

{¶ 18} The court further explained that offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Id.* at ¶ 21. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. *Id.*

{¶ 19} Appellant argues that at sentencing, the forgery convictions should have merged into the corresponding theft offenses. Appellant argues that the theft by deception was committed by forging Mr. Yoder's name on the checks to deposit them. Thus, the offenses were committed by the same conduct for each check. Further, as in appellant's first assignment of error he contends that the victim, Yoder, was the same for each check.

{¶ 20} We first note that based upon our prior finding that there were multiple victims, we reject appellant's related arguments. As to the offenses of theft by deception

9.

and forgery, this court has observed that "a single course of conduct may entail multiple criminal acts." *State v. Russell*, 6th Dist. Lucas Nos. L-15-1002, L-15-1003, 2015-Ohio-2802, ¶ 19, citing *State v. Smith*, 11th Dist. Geauga No. 2014-G-3185, 2014-Ohio-5076, ¶ 26.

{¶ 21} Reviewing the present facts, we similarly find that the checks involved in Counts 2, 4, 6, 8, 12, and 14 involved separate individuals, for separate amounts, on separate days. Count 18, theft of elderly persons, is a distinct offense and appellant has not demonstrated plain error in the court's failure to merge the conviction.

{¶ 22} Appellant further contends that the possession of criminal tools conviction should merge with the theft convictions. Specifically, appellant contends that the rubber stamps were used to facilitate the offenses and, thus, occurred together with the forgery and theft offenses. Conversely, the state argues that the record alludes to multiple rubber stamps and that some of them may not have been used to facilitate these specific charges.

{¶ 23} Reviewing the record before us, we agree that there are references to multiple stamps, with various names and banking institutions found in appellant's possession. Thus, we find that the trial court did not commit plain error in failing to find that the criminal tools offense was an allied offense of similar import. Appellant's second assignment of error is not well-taken.

{¶ 24} In his third assignment of error, appellant contends that the trial court erred in failing to reduce his penalties and punishments for multiple fourth-degree felonies due to the 2011 enactment of H.B. 86 which, inter alia, increased values for determining the

10.

level of theft offenses. Specifically, appellant contends that forgery Counts 4, 8, and 10, which had loss values below $7,500, should be amended to fifth, rather than fourth-degree felonies. Further, appellant argues that because Count 23, also a theft count, failed to have any monetary amount listed, it should be designated as a first-degree misdemeanor.

{¶ 25} H.B. 86, effective September 30, 2011, reduced the classification of theft-related felonies. Under the former version of the statute, a fourth-degree felony offense occurred when the value of the loss was between $5,000 and $100,000. Under the amended statute, the monetary range was raised to $7,500 to $150,000. The Supreme Court of Ohio has held, and the state concedes, that because the effective date of the statute was prior to appellant's sentencing, he was entitled to a reduction in the offense classification. *See State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, *accord State v. Cornett*, 6th Dist. Wood No. WD-13-024, 2014-Ohio-1988. Accordingly, plain error occurred and appellant must be resentenced for his convictions under Counts 4, 8, and 10.

{¶ 26} As to Count 23, we find that appellant was properly convicted of theft as the corresponding charge of passing bad checks listed the monetary amount as $1,561. Further at the plea hearing appellant was informed that the restitution amount to Bennett Novelties was $1,561.

11.

{¶ 27} Based on the forgoing, we find that appellant's third assignment of error is well-taken, in part, and that appellant be resentenced for his convictions under Counts 4, 8, and 10.

{¶ 28} Appellant's fourth assignment of error contends that he was deprived of his constitutional right to effective trial counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 29} As it relates to convictions based upon guilty pleas, the prejudice element generally requires a showing "that there is a reasonable probability that, but for counsel's errors * * * [the defendant] * * * would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Xie*, 62 Ohio St.3d 521,524, 584 N.E.2d 715 (1992).

{¶ 30} Reviewing our analyses of the preceding three assignments of error, we cannot say that appellant's counsel was ineffective by failing to raise various legal issues.

12.

First, we rejected both the aggregation and allied offense arguments. Next, regarding the H.B. 86 issue, as the state notes the law was not settled until the Supreme Court of Ohio's decision in *Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612 (resolving a conflict between the Ninth and Fifth Appellate Districts). Finally, despite being indicted on 23 felony counts, appellant's counsel was able to secure a plea agreement and he was initially sentenced to community control. Based on these facts, we find appellant's fourth assignment of error not well-taken.

{¶ 31} In appellant's fifth assignment of error he argues that the trial court erred in sentencing him to consecutive sentences where he was not provided with the notification required under R.C. 2929.14(C)(4). Specifically, appellant contends that the sentence is contrary to law because the court at appellant's initial 2012 sentencing stated that it would impose consecutive sentences if appellant violated community control, but failed to explain why a consecutive sentence would be imposed for a community control violation. Conversely, the state asserts that the necessary findings were, in fact, made at the January 23, 2015 sentencing hearing and further reflected in the January 28, 2015 judgment entry.

{¶ 32} We review consecutive sentences under the standard of review set forth in R.C. 2953.08. *State v. Banks*, 6th Dist. Lucas No L-13-1095, 2014-Ohio-1000, ¶ 10. Under R.C. 2953.08(G)(2), we may increase, reduce, or modify a sentence, or vacate the sentence and remand that matter to the sentencing court for resentencing, if we clearly and convincingly find that either the record does not support the trial court's findings

13.

under R.C. 2929.14(C)(4), or the sentence is otherwise contrary to law. This same standard applies on review of the imposition of consecutive sentences following a community control revocation hearing. *State v. Steck*, 6th Dist. Wood Nos. WD-13-017, WD-13-018, 2014-Ohio-3623.

{¶ 33} R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

14.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 34} In *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus, the Supreme Court of Ohio clarified the responsibilities of a trial court when imposing consecutive sentences:

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

{¶ 35} The court further explained:

[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld. Id. at ¶ 29.

{¶ 36} At the January 23, 2015 sentencing hearing, a lengthy discussion was had regarding appellant's criminal activities which resulted in his community control violation. The court then stated that it was terminating appellant's community control and imposing a 58-month prison sentence, a 28-month sentence consecutive to a 30-month sentence and also consecutive to any prison terms appellant was currently serving.

15.

The court stated that "consecutive sentences are necessary because the sentence is proportionate to the seriousness of the Defendant's conduct, and the danger of future crimes, and the danger the Defendant poses to the public, and his history of criminal conduct."

{¶ 37} Appellant contends that the above recitation was insufficient because the court had predetermined at appellant's 2012 sentencing hearing that if appellant violated community control he would receive a consecutive sentence. We disagree. As noted by the state and conceded by appellant, the consecutive sentence was not imposed until January 28, 2015. At the sentencing hearing, the trial court properly found that consecutive sentences were warranted under R.C. 2929.14(C)(4)(c). Appellant's fifth assignment of error is not well-taken.

{¶ 38} In appellant's sixth and final assignment of error he argues that the court erred when it failed to provide notice under R.C. 2947.23(A) that community service could be imposed. The version of R.C. 2947.23(A) in effect when appellant was sentenced to prison provides, in part:

> (A)(1)(a) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. If the judge or magistrate imposes a community control sanction or other

nonresidential sanction, the judge or magistrate, when imposing the sanction, shall notify the defendant of both of the following:

(i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(ii) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

(b) The failure of a judge or magistrate to notify the defendant pursuant to division (A)(1)(a) of this section does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment described in that division or to timely make payments toward that judgment under an approved payment plan.

{¶ 39} Former R.C. 2947.23(A)(1)(a) provided that the trial court must notify the defendant when imposing its sentence that he may be subject to the community service requirement. *See* R.C. 2947.23(A)(1)(a), effective September 28, 2012. That subsection was revised effective March 22, 2013, as set forth above, to require that the court advise the defendant of the community service notification only when it imposes either a

community control sanction or other nonresidential sanction. *State v. Lewis*, 9th Dist. Summit No. 27222, 2014-Ohio-4559, ¶ 28. That the court did so when it advised appellant in the judgment entry that his failure to pay court costs could result in the imposition of community service, does not amount to error. *State v. Tunison*, 6th Dist. Wood No. WD-13-046, 2014-Ohio-2692, ¶ 9. Accordingly, we find that appellant's sixth assignment of error is not well-taken.

**{¶ 40}** On consideration whereof, we find that appellant was prejudiced and prevented from having a fair proceeding and the trial court's January 28, 2015 judgment is reversed and the matter is remanded for resentencing in accordance with this decision. Pursuant to App.R. 24, appellee is ordered to pay the costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.
_____
JUDGE
Stephen A. Yarbrough, J.

_____
James D. Jensen, P.J.
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.